1 | Spencer C. Skeen CA Bar No. 182216
spencer.skeen@ogletree.com
2 | Tim L. Johnson CA Bar No. 265794
tim.johnson@ogletree.com
3 | Andrew J. Deddeh CA Bar No. 272638
andrew.deddeh@ogletree.com
4 | OGLETREE, DEAKINS, NASH,
SMOAK & STEWART, P.C.
5 | 4660 La Jolla Village Drive, Suite 900
San Diego, CA  92122
6 | Telephone:   858-652-3100
Facsimile:    858-652-3101

Attorneys for Defendant JETSUITEX, INC.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| JACOB McKEEHAN, individually and on behalf of all others similarly situated, | Case No. |
|---|---|
| Plaintiff, | **CLASS ACTION** |
| v. | **DEFENDANT'S NOTICE OF REMOVAL OF CIVIL ACTION TO UNITED STATES DISTRICT COURT** |
| JETSUITEX, INC.; and DOES 1 through 20, inclusive, | [28 U.S.C. § 1332(d) (Class Action Fairness Action)] |
| Defendants. | [Filed concurrently herewith Civil Cover Sheet; Notice of Interested Parties; and Declarations of Kevin Horan and Tim L. Johnson] |
|  | Complaint Filed: July 28, 2022
Removed: |

# **TABLE OF CONTENTS**

I. STATE COURT ACTION ............................................................................. 1

II. REMOVAL IS TIMELY ............................................................................... 1

III. REMOVAL IS PROPER UNDER CAFA .................................................... 2

    A. CAFA's Diversity of Citizenship Requirement Is Satisfied .......... 3

    B. CAFA's Class Size Requirement Is Satisfied ............................... 4

    C. CAFA's Requisite $5 Million Amount in Controversy Is Satisfied ........................................................................................... 4

        1. Relevant Data ....................................................................... 5

        2. Meal and Rest Period Premium Pay .................................... 6

        3. Waiting Time Penalties ........................................................ 9

        4. Wage Statement Penalties .................................................. 10

        5. Failure to Pay Wages ......................................................... 10

        6. Attorney Fees ..................................................................... 11

        7. Summary ............................................................................ 12

IV. VENUE IS PROPER IN THIS COURT ..................................................... 12

V. CONCLUSION............................................................................................ 13

# TABLE OF AUTHORITIES
**Cases**                                                        **Page(s)**

*Altamirano v. Shadow Indus., Inc.*,
   No. C-13-0939 EMC, 2013 WL 2950600 (N.D. Cal. Jan. 14, 2013) .................. 12

*Alvarez v. Office Depot, Inc.*
   No. CV177220PSGAFMX, 2017 WL 5952181 (C.D. Cal. Nov. 30,
   2017) ....................................................................................................................... 8

*Arias v. Residence Inn By Marriott, Ltd.*,
   936 F.3d 920 (9th Cir. 2019) ............................................................................. 7, 8

*Bryant v. NCR Corp.*,
   284 F. Supp. 3d 1147 (S.D. Cal. 2018) .................................................................. 8

*Cortez v. Purolator Air Filtration Prods. Co.*,
   23 Cal. 4th 163 (2000) ........................................................................................... 6

*Crummie v. CertifiedSafety, Inc.*,
   No. 17-CV-03892-RS, 2017 WL 4544747 (N.D. Cal. 2017) ................................ 9

*Elizarraz v. United Rentals, Inc.*,
   2019 WL 1553664 (C.D. Cal. Apr. 9, 2019) .......................................................... 8

*Falk v. Children's Hospital Los Angeles*,
   237 Cal. App.4th 1454 (2015) ....................................................................... 10, 11

*Garibay v. Archstone Communities LLC*,
   539 F. App'x 763 (9th Cir. 2013) ......................................................................... 11

*Harris v. Bankers Life and Cas. Co.*,
   425 F.3d 689 (9th Cir. 2005) ................................................................................. 1

*Henry v. Central Freight Lines, Inc.*,
   692 F. App'x 806 (9th Cir. 2017) ........................................................................... 5

*Hertz Corp. v. Friend*,
   130 S. Ct. 1181 (2010) ........................................................................................... 3

*Ibarra v. Manheim Investments, Inc.*,
   775 F.3d 1193 (9th Cir. 2015) ............................................................................... 5

*LaCross v. Knight Trans. Inc.*,
775 F.3d 1200 (9th Cir. 2015) .......... 4

*Marentes v. Key Energy Servs. Cal., Inc.*,
No. L13–CV–02067 AWI, 2015 WL 756516 (E.D. Cal. Feb. 23, 2015) .......... 9

*Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*,
526 US 344 (1999) .......... 2

*Oda v. Gucci Am., Inc.*,
No. 2:14-CV-07469-SVW, 2015 WL 93335 (C.D. Cal. Jan. 7, 2015) .......... 8

*Olson v. Becton, Dickinson & Co.*,
No.: 19cv865-MMA (BGS), 2019 WL 4673329 (S.D. Cal., Sep. 25, 2019) .......... 8

*Pineda v. Bank of Am., N.A.*,
50 Cal. 4th 1389 (2010) .......... 9

*Rodgers v. Central Locating Service, Ltd.*,
2006 U.S. Dist. LEXIS 6255 .......... 3

*Roth v. CHA Hollywood Medical Center, L.P.*,
720 F.3d 1121 (9th Cir. 2013) .......... 2

*Rwomwijhu v. SMX, LLC*,
No. CV1608105ABPJWX, 2017 WL 1243131 (C.D. Cal. Mar. 3, 2017) .......... 11

*Standard Fire Ins. Co. v. Knowles*,
133 S.Ct. 1345 (2013) .......... 4

*Tomlinson v. Indymac Bank, F.S.B.*,
359 F. Supp. 2d 891 (C.D. Cal. 2005) .......... 6

**Statutes and Other Authorities**

28 U.S.C. § 84(b) .......... 12

28 U.S.C. § 1332(d) .......... 1, 3, 4, 5

28 U.S.C. § 1441(a) .......... 12

28 U.S.C. § 1446 .......... 1, 2, 3, 12, 13

Business and Professions Code Section 17200 ........................................................ 6, 11

Class Action Fairness Act (CAFA) ................................................................*passim*

Cal. Bus. & Prof. Code § 17208 ................................................................................ 6

Cal. Code Civ. Proc. § 338 ...................................................................................... 10

Cal. Code Civ. Proc. §340(a) .................................................................................. 10

California Code of Civil Procedure Section 382 ...................................................... 4

California Labor Code Section 203 .......................................................................... 9

California Labor Code §§ 510 and 1194 ................................................................ 10

Labor Code §§ 201 and 202 ...................................................................................... 9

Labor Code § 226 .................................................................................................... 10

Federal Rule of Civil Procedure 6(a) ................................................................. 2, 12

Defendant JetSuiteX, Inc. ("JetSuiteX") removes this action to the United States District Court for the Central District of California under 28 U.S.C. Section 1332(d) (the Class Action Fairness Act ["CAFA"]) and Section 1446 because (1) Plaintiff Jacob McKeehan ("Plaintiff") and other members of the putative class are citizens of a state different from any defendant; (2) the number of members of all proposed plaintiff classes in the aggregate is over 100; and (3) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs. All CAFA requirements are satisfied here.

## I.   STATE COURT ACTION

1. Plaintiff filed his Complaint on July 28, 2022, in the Los Angeles County Superior Court ("Action"). The Los Angeles County Superior Court assigned the Action Case No. 22STCV24435. (Declaration of Tim L. Johnson ["Johnson Decl."], ¶ 2; Ex. 1, Complaint.)

2. Plaintiff served JetSuiteX with the Complaint on August 26, 2022. (Johnson Decl., ¶ 3; Ex. 2, Proof of Service.) JetSuiteX filed its Answer to the Complaint in the Los Angeles County Superior Court on August 30, 2022. (Johnson Decl., ¶ 4; Ex. 3, Answer.)

## II.   REMOVAL IS TIMELY

3. The time to remove under 28 U.S.C. Section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life and Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005). Here, the four corners of the Complaint do not provide readily ascertainable grounds for removal. The Complaint does not allege sufficient facts to calculate the amount in controversy with reasonable certainty as to the individually named plaintiff or as to the putative class. Nor does the Complaint allege any claim under federal law. Accordingly, as mentioned, it is not possible to ascertain from the Complaint that this case is removable, and, to date, JetSuiteX has not received any

other document which would constitute an "other pleading, motion, order or other paper" providing this missing information. (Johnson Decl. ¶ 6.) Thus, the time to remove this action has not yet begun. Where the time to remove has not yet expired, a defendant may remove at any time if it uncovers evidence establishing that the case is removable. *Roth v. CHA Hollywood Medical Center, L.P.,* 720 F.3d 1121, 1125 (9th Cir. 2013). As set forth below, JetSuiteX has only recently discovered such evidence after an arduous collection and review of records of potential class members and a complex analysis of the estimated damages allocated to each cause of action. As such, JetSuiteX is timely removing this case based on that discovery.

4. Even if it could be determined from the four corners of the Complaint that this action is removable, this Notice of Removal would still be timely. Plaintiff served JetSuiteX with the Complaint on August 26, 2022 (Johnson Decl., Ex. 2) Under 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), the time to remove could not expire, at the earliest, until after September 26, 2022, the first day which is 30 days after being served with the Complaint. *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 US 344, 354 (1999). This removal is timely.

### III. REMOVAL IS PROPER UNDER CAFA

5. The Complaint asserts the following claim on a class-wide basis: (1) failure to pay minimum wages; (2) failure to pay overtime wages; (3) failure to provide lawful meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay wages during employment; (6) failure to timely pay wages upon separation of employment; (7) knowing and intentional failure to comply with itemized wage statement provisions; and (8) violation of the unfair competition law.

6. CAFA grants district courts original jurisdiction over civil class action lawsuits filed under federal or state law in which any member of a class of plaintiffs is a citizen of a state different from any defendant; the number of members of all proposed plaintiff classes in the aggregate is over 100; and where the matter in

controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. 28 U.S.C. § 1332(d). CAFA authorizes such removal under 28 U.S.C. Section 1446.

7. This Court has original jurisdiction over the Action under CAFA because it is a civil case filed as class action wherein at least one member of the putative class of plaintiffs is a citizen of a state different from JetSuiteX, Inc.; the number of individuals in Plaintiff's proposed classes in the aggregate is over 100; and the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

### A. CAFA's Diversity of Citizenship Requirement Is Satisfied

8. CAFA's diversity requirement is satisfied when at least one plaintiff is a citizen of a state in which none of the defendants qualifies as citizens. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453(a) and (b); *Rodgers v. Central Locating Service, Ltd.*, 2006 U.S. Dist. LEXIS 6255, *7-*8.

9. Under 28 U.S.C. Section 1332(d)(10), "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." The Supreme Court has held the principal place of business is best read as referring to the place where a company's officers direct, control, and coordinate its activities. *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1184 (2010). The Court further clarified the principal place of business was the place where a company "maintains its headquarters – provided that the headquarters is the actual center of direction, control and coordination." *Id.*

10. At all relevant times, Plaintiff has been a resident of California. (Ex. 1, Complaint, ¶ 10.)

11. Around August 2018, JetSuiteX organized as a corporation under the laws of the State of Delaware, and since that time, it operated its principal place of business in Dallas, Texas. Its executive management has directed, controlled, and coordinated its activities from there. JetSuiteX has not organized itself under the laws of California nor had its principal place of business in California since August 2018. (Declaration of Kevin Horan ["Horan Decl."], ¶ 3.)

12. Minimal diversity is present here because, at all relevant times, Plaintiff has been a citizen of California and JetSuiteX has not.

### B. CAFA's Class Size Requirement Is Satisfied

13. Plaintiff brings the Action pursuant to California Code of Civil Procedure Section 382 on behalf of the following class ("Class"):

> All persons who are or were employed by the Defendants, as hourly paid, non-exempt employees in the State of California at any time from four years prior to the filing of this action through resolution or trial of the matter.

(Ex. 1, Complaint, ¶ 20.)

14. While JetSuiteX disputes Plaintiff's allegations, from July 28, 2018, through August 31, 2022, in the aggregate, the putative class includes at least 253 hourly-paid non-exempt employees.[1] (Horan Decl. ¶ 4.) Thus, CAFA's size requirement is satisfied.

### C. CAFA's Requisite $5 Million Amount in Controversy Is Satisfied

15. CAFA authorizes the removal of class action cases in which the amount in controversy for all class members exceeds $5,000,000. 28 U.S.C. § 1332(d).

16. Under CAFA, the "District Court [must] determine whether it has jurisdiction by adding up the value of the claim of each person who falls within the definition of [a plaintiff's] proposed class and determine whether the resulting sum exceeds [$5,000,000]." *Standard Fire Ins. Co. v. Knowles*, 133 S.Ct. 1345, 1348 (2013). Courts look to the allegations in the complaint in determining the amount in controversy. *LaCross v. Knight Trans. Inc.*, 775 F.3d 1200, 1202 (9th Cir. 2015) ("[O]ur first source of reference in determining the amount in controversy [is] plaintiff's complaint"). "In determining the amount in controversy, the Court accepts the allegations contained in the complaint as true and assumes the jury will return a

---

[1] JetSuiteX did not employ any of the putative class members.

verdict in the plaintiff's favor on every claim." *Henry v. Central Freight Lines, Inc.*, 692 F. App'x 806 (9th Cir. 2017).

17. For purposes of removal, "[t]he court accepts the allegations in the complaint as true and assumes the jury will return a verdict in the plaintiff's favor on every claim." *Henry v. Cent. Freight Lines, Inc.*, 692 F. App'x 806, 807 (9th Cir. 2017); citing, *Campbell v. Vitran Express, Inc.*, 471 F. App'x. 646, 648 (9th Cir. 2012). In determining whether the amount in controversy requirement is met, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289 (1938)).

18. Plaintiff seeks the recovery of compensatory damages, unpaid compensation including but not limited to unpaid wages (including minimum and overtime wages), unreimbursed expenses, benefits, penalties, economic damages, special damages, liquidated damages, statutory penalties, injunctive relief, restitution, prejudgment interest, reasonable attorney fees and costs, post-judgment interest, premium wages (plus interest and penalties), waiting time penalties, and itemized wage statement penalties, on behalf of himself and the putative classes. (*See* Ex. 1, Complaint.) The Complaint satisfies the $5,000,000 threshold for CAFA removal. *See* 28 U.S.C. § 1332(d).

19. As shown below, the amount in controversy is above the $5,000,000 jurisdictional minimum.

### 1. **Relevant Data**

20. Plaintiff seeks to certify various classes and subclasses from July 28, 2018 to the present. From July 28, 2018 to August 31, 2022, JetSuiteX employed, in the aggregate, at least 253 hourly-paid non-exempt employees in California. Those employees worked approximately 13,513 workweeks or at least 6,232 pay periods. The average hourly rate during the alleged class period is $20.99. (Horan Decl., ¶ 4.)

21. From July 28, 2019, to August 31, 2022, at least 167 hourly-paid non-exempt employees in California separated from their employment. The average hourly rate during the alleged class period is $20.99. This equals an average daily rate (8 hours) of approximately $167.92. (Horan Decl., ¶ 5.)

22. From July 28, 2021, to August 31, 2022, at least 75 hourly-paid non-exempt employees in California received at least 1,954 wage statements. (Horan Decl., ¶ 6.)

## 2.   **Meal and Rest Period Premium Pay**

23. Plaintiff's eighth cause of action for violation of the UCL alleges all of JetSuiteX's policies constitute unlawful business acts and practices in violation of California Business & Professions Code §§ 17200, et seq. (Complaint ¶ 88-97) "Defendants **systematically** engaged in unlawful conduct in violation of the California Labor Code and IWC Wage Orders, such as failing to pay all wages (minimum and overtime wages), failing to provide meal periods and rest breaks or compensation in lieu thereof, failing to furnish accurate wage statements, and failing to pay all wages due and owing upon separation of employment in a timely manner to the Waiting Time Subclass, all in order to decrease their costs of doing business and increase their profits." (Complaint ¶ 92) Plaintiff's introductory statement alleges "Defendants engaged in a **systematic pattern** of wage and hour violations". (Complaint ¶ 3) (Emphasis Added)

24. The statute of limitations for a claim under the UCL is four years. Cal. Bus. & Prof. Code § 17208. Under the UCL, an individual may recover unlawfully withheld wages as a form of restitution. *Cortez v. Purolator Air Filtration Prods. Co.*, 23 Cal. 4th 163, 173 (2000). A plaintiff may seek to recover meal or rest period premium pay as a form of restitution under the UCL, under the theory that premium pay constitutes wages. *See Tomlinson v. Indymac Bank, F.S.B.*, 359 F. Supp. 2d 891, 896-97 (C.D. Cal. 2005). Plaintiff thus seeks to certify meal and rest period classes dating back four years, to July 28, 2018.

25. Plaintiff further alleges that JetSuiteX had a ***policy and practice*** of meal and rest violations, with alleged violations occurring ***daily***. Specifically, Plaintiff alleges, "Plaintiff and Class Members did not receive compliant meal periods for working more than five (5) and ten (10) hours per day because their meal periods were missed, late, short, interrupted, and/or they were not permitted to take a second meal period." (Complaint, ¶ 60);

26. Plaintiff further alleges rest period violations and states, "Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods." (Complaint, ¶ 67)

27. From July 28, 2018 to August 31, 2022, JetSuiteX employed at least 253 non-exempt employees in California who worked approximately 13,513 workweeks and 6,232 pay periods; and had an average hourly rate of approximately $20.99. (Horan Decl. ¶ 4.)

28. JetSuiteX may employ reasonable assumptions based on the Complaint to determine the amount in controversy. *Arias v. Residence Inn By Marriott, Ltd.,* 936 F.3d 920, 927 (9th Cir. 2019) ("[A]ssumptions made part of the defendant's chain of reasoning need not be proven; they instead must only have 'some reasonable ground underlying them.'"). Based on the alleged "policy and practice" of "regular" meal and rest period violations, JetSuiteX utilized a conservative estimate of 60% meal and 60% rest period violation rates (or one meal and one rest violation per employee per week), resulting in a total amount of meal and rest period premium pay in controversy of approximately of **$1,701,827.22**. (**Meal Period**: 13,513 work weeks x $20.99 average hourly rate x 5 total shifts per week x 60% violation rate = $850,913.61; **Rest Period**: 13,513 work weeks x $20.99 average hourly rate x 5 total shifts per week x 60% violation rate = $850,913.61).

29. The Ninth Circuit supports such assumptions. In *Arias*, the plaintiff alleged that the defendant routinely failed to provide compensation for missed rest breaks, among other claims. The defendant suggested that assuming three missed rest periods per week (a 60% violation rate) would be conservative and would place $6,466,480 in controversy. *Id.* The Ninth Circuit indicated that the defendant's "assumptions are plausible and may prove to be reasonable in light of the allegations in the complaint." *Id.* at 927. The court made clear that a defendant need not "prove it actually violated the law at the assumed rate." *Id.* ("The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability.") (quoting *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 401 (9th Cir. 2010)).

30. District courts also support higher alleged meal and rest period violation rates for purposes of CAFA removal. *See, e.g., Elizarraz v. United Rentals, Inc.*, 2019 WL 1553664, at *3-4 (C.D. Cal. Apr. 9, 2019) ("courts have found violations rates of 50% proper with language such as "policy and practice""); *Alvarez v. Office Depot, Inc.* No. CV177220PSGAFMX, 2017 WL 5952181, at *3 (C.D. Cal. Nov. 30, 2017) (finding reasonable a 60% violation rate for claims relating to missed meal and rest periods when the complaint is indeterminate with respect to violation rates); *Bryant v. NCR Corp.*, 284 F. Supp. 3d 1147, 1151-52 (S.D. Cal. 2018) (accepting 60% violation rate based on alleged "policy and practice" of violations); *Oda v. Gucci Am., Inc.*, No. 2:14-CV-07469-SVW, 2015 WL 93335, at *4-5 (C.D. Cal. Jan. 7, 2015) (upholding assumed 50% violation rate on both meal *and* rest period claims where plaintiffs alleged that "Plaintiffs and the class members sometimes did not receive all of their meal periods in a lawful fashion" and JetSuiteX "maintained a policy or practice of not paying additional compensation to employees for missed, uninterrupted [sic], and/or timely meal and/or rest periods"); *Olson v. Becton, Dickinson & Co.*, No.: 19cv865-MMA (BGS), 2019 WL 4673329, at *5 (S.D. Cal., Sep. 25, 2019) (applying *Arias,* finding "application of a 25% violation rate is reasonable" where there is a

"pattern and practice" of alleged meal and rest period violations) (citing *Arias,* 936 F.3d at 927).

### 3. Waiting Time Penalties

31. Plaintiff alleges that "Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ" (Ex. 1, Complaint, ¶ 84.) Plaintiff further alleges, "Defendants failed to timely pay the Waiting Time Subclass all their earned wages at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ is in violation of Labor Code §§ 201 and 202." (Ex. 1, Complaint, ¶ 85.)

32. California Labor Code Section 203 provides "[i]f an employer willfully fails to pay … any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days." *Pineda v. Bank of Am., N.A.*, 50 Cal. 4th 1389, 1398 (2010). The limitations period for such waiting time penalty claims is three years. *Id.* at 1400.

33. From July 28, 2019, to August 31, 2022, at least 167 hourly-paid non-exempt employees in California separated from their employment. The average hourly rate during the alleged class period is $20.99. This equals an average daily rate (8 hours) of approximately $167.92. (Horan Decl., ¶ 5.)

34. Therefore, based on Plaintiff's allegations, the amount in controversy for waiting time penalties alone is at least **$841,279.20** ($20.99 per hour x 8 hours x 30 days x 167 putative class members). *See Crummie v. CertifiedSafety, Inc.*, No. 17-CV-03892-RS, 2017 WL 4544747, at *3 (N.D. Cal. 2017) (finding it "completely reasonable" for the defendant to assume the maximum, 30-day period of waiting time penalties where the allegations support the assumption); *Marentes v. Key Energy Servs. Cal., Inc.*, No. L13–CV–02067 AWI, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015) (where "wages are alleged to have not been paid, the full thirty days may be

used for each of the putative class members."). Even if reducing the amount by 33%, the amount in controversy easily exceeds the $5,000,000 threshold.

### 4. Wage Statement Penalties

35. Plaintiff also alleges "Defendants have knowingly and intentionally failed to comply with Labor Code §226(a) on wage statements that were provided to Plaintiff and Class Members. The deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members." (Complaint, ¶ 73.) As a result, Plaintiff seeks statutory penalties for inaccurate wage statements under Labor Code § 226 in the amount of $50 for the initial violation and $100 for each subsequent violation. (*Id.*, ¶ 75.)

36. A one-year statutory period applies to Plaintiff's claim for wage statement penalties. Cal. Code Civ. Proc. §340(a); *Falk v. Children's Hospital Los Angeles*, 237 Cal. App.4th 1454, 1469 (2015).

37. As noted above, from July 28, 2021, to August 31, 2022, JetSuiteX issued approximately 1,954 wage statements to 73 putative class members. (Horan Decl., ¶ 6.) Therefore, based on Plaintiff's allegations, the amount in controversy for wage statement penalties is **$191,850** (75 wage statements x $50 = $3,750; 1,881 wage statements x $100 = $188,100 [$3,750+ $188,100 = $191,850]). For purposes of removal, JetSuiteX excluded any pay periods above 40 for a given employee (i.e., a $3,950 penalty), so the maximum statutory penalty alleged by Plaintiff of $4,000 (which JetSuiteX denies) does not apply. (Horan Decl., ¶ 6.)

### 5. Failure to Pay Wages

38. Plaintiff's Complaint alleges that JetSuiteX failed to pay hourly wages to Plaintiff and Class members for all time worked, including but not limited to, minimum wages (Complaint, ¶ 36-42.), and overtime hours. (Complaint, ¶ 43-54.)

39. The statute of limitations for recovery for unpaid wages under California Labor Code §§ 510 and 1194 is three years. Cal. Civ. Proc. Code § 338. The

limitations period extends to four years when a plaintiff also seeks restitution for the Labor Code violations. *Falk v. Children's Hosp. Los Angeles*, 237 Cal. App. 4th 1454, 1462, n.12 (2015) ("actions for restitution and under Business and Professions Code Section 17200 are subject to a four-year statute of limitation"). Accordingly, the proposed class period for Plaintiff's overtime claim is from July 28, 2018 until the present.

40. As stated above, during the relevant period identified in the Complaint, JetSuiteX employed approximately 253 Putative Class Members, who worked a total of approximately 13,513 workweeks. The average hourly rate of pay for these individuals is approximately $20.99. (Horan Decl., ¶¶ 4.)

41. JetSuiteX will continue to assume a 60% violation rate for purposes of calculating the amount in controversy. The amount in controversy for the unpaid minimum wage claim would be **$850,913.61** [(13,513 workweeks) × ($20.99 per hour) × 5 days a week x 60% violation rate].

42. JetSuiteX will continue to assume a 60% violation rate for purposes of calculating the amount in controversy. The amount in controversy for the unpaid overtime wage claim would be **$1,276,573.11** [(13,513 workweeks) × ($31.49 per hour) × 5 days a week x 60% violation rate]

### 6. Attorney Fees

43. Based on the above, JetSuiteX has demonstrated there is at least **$4,862,443.14** in controversy.

44. Plaintiff also seeks attorney fees in connection with the above claims. (Complaint.) In the Ninth Circuit, 25% of the total recovery is the "benchmark level" for reasonable attorney fees in class action cases. *Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013). Using this 25% benchmark, courts have included attorney fees for 25% of the total recovery in determining the amount in controversy under CAFA. *Id.* (contemplating inclusion of 25% of total recovery in attorney fees under CAFA); *Rwomwijhu v. SMX, LLC*, No. CV1608105ABPJWX,

2017 WL 1243131, at *6 (C.D. Cal. Mar. 3, 2017) (including fees in calculation, noting that "courts in the Ninth Circuit, including this one, have allowed an estimated fee award of 25% of a plaintiff's damages in calculating the amount in controversy under CAFA"); *Altamirano v. Shadow Indus., Inc.*, No. C-13-0939 EMC, 2013 WL 2950600, at *13 (N.D. Cal. Jan. 14, 2013) (including 25% attorney's fees to increase the amount-in-controversy to above $5,000,000 CAFA threshold).

45. Assuming an award of attorney fees in the benchmark amount of 25% of the total recovery, the amount in controversy for such fees is **$1,215,610.78** (**$4,862,443.14** x 0.25).

46. Therefore, the total amount in controversy based on Plaintiff's allegations is at least $**6,078,053.92** ($1,215,610.78 [attorney fees] + $4,862,443.14 [alleged damages].)

### 7. Summary

47. Based on Plaintiff's allegations, the amount in controversy is at least **$6,078,053.92**($1,215,610.78 + $4,862,443.14). The Complaint satisfies the $5,000,000 threshold.

## IV. VENUE IS PROPER IN THIS COURT

48. Under 28 U.S.C. Section 1441(a), this Notice of Removal is filed in the district court of the United States in which the Action is pending. The Superior Court for the County of Los Angeles is within the Central District of California. 28 U.S.C. § 84(b). As such, venue is proper in this Court because it is the district and division embracing the place where the Action is pending. 28 U.S.C. § 1441(a).

49. Under 28 U.S.C. Section 1446(a), this Notice of Removal is accompanied by the Declarations of Kevin Horan, Tim L. Johnson and Exhibits 1 to 3, which constitute a copy of all processes, pleadings, and orders provided to JetSuiteX.

50. As required by 28 U.S.C. Section 1446(b) and Federal Rule of Civil Procedure 6(a), JetSuiteX timely filed this Notice of Removal, as Plaintiff served it on August 26, 2022.

51. As required by 28 U.S.C. Section 1446(d), JetSuiteX provided Notice of Removal to Plaintiff through his attorney of record.

52. As required by 28 U.S.C. Section 1446(d), JetSuiteX will file a copy of the original Notice of Removal with the Superior Court of the State of California, for the County of Los Angeles.

53. If this Court has a question regarding the propriety of this Notice of Removal, JetSuiteX requests it issue an Order to Show Cause so it can provide additional briefing on the grounds for this removal.

## V.   CONCLUSION

For the foregoing reasons, JetSuiteX removes the above-entitled action to the United States District Court for the Central District of California.

DATED: September 26, 2022    OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By: */s/ Spencer C. Skeen*
Spencer C. Skeen
Tim L. Johnson
Andrew J. Deddeh
Attorneys for Defendant
JETSUITEX, INC.